## The Belt Railway Company of Chicago v. William Charters by James Charters, his next friend.

### Gen. No. 12,108.

1. JUDGMENT—*when excessive.* A judgment of $7,000 is excessive where it appears that the plaintiff was at the time of his injury of about the age of twelve years and suffered by reason of the accident the loss of part of his right foot and by reason thereof suffers at times inconvenience and has a slight limp, it likewise appearing that in his employment at the time of the trial, as a messenger boy, he was able to perform his duties in a satisfactory manner.

2. REMITTITUR—*when does not cure excessive verdict.* Where the amount of the verdict is so large as to indicate that the jury were swayed by passion or prejudice, a *remittitur* will not correct the vice, and a new trial should be awarded.

3. WANTON INJURY—*when essential to recovery.* One who volunteers to assist the servant of another in the performance of his duties can only recover for an injury suffered by showing a wilful or wanton injury, and this notwithstanding such volunteer was a minor of the age of about twelve years.

4. ATTRACTIVE NUISANCE—*doctrine of, as applied to actions for personal injuries.* This doctrine is recognized in Illinois, but in almost every case it has been applied only where the injury was suffered by a child under the age of ten years and incapable of exercising ordinary care, and where, likewise, the machinery or other dangerous agent was situated near a public street or alley, in a populous neighborhood, and unfenced, and it is a question of fact for the jury in applying such doctrine to pass upon the question of the care or want of care, of the child

injured, for his own safety, and the negligence, or the lack of it, upon the part of the defendant.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed November 2, 1905.

**Statement by the Court.**    This is an action brought by appellee, the plaintiff below, to recover damages for personal injuries caused, as it is claimed, by the negligence of appellant, the defendant below.

The declaration consists of two counts.    The first sets up that the defendant used and controlled a railway turn-table in the city of Chicago, which was an open and unguarded structure situated near certain public streets in the midst of a thickly settled district, where children were allowed and permitted, with the knowledge and consent of the defendant, to congregate and play, and said structure consisted of certain dangerous revolving machinery of such a character as to be attractive to children and to appeal to their childish curiosity.

"The defendant, well knowing the premises and the aforesaid danger, and the presence of children in a position of danger then and there wrongfully, carelessly and negligently and without warning said children of the danger, operated and turned said table, whereby plaintiff, who was then and there a child of tender years, to wit: eleven years and eight months old, and unfamiliar with the dangers aforesaid, and while in the exercise of due care for his own safety, unavoidably had his right foot and leg caught in the machinery of said turn-table, and was injured as hereinafter mentioned."

The second count begins with a like introductory statement and concludes :

"The defendant, well knowing the premises and the aforesaid danger and the presence of children in a position of danger, then and there by means of its servants requested and invited the plaintiff, who was a minor of tender years and unfamiliar with the dangers aforesaid, to operate the said turn table, which work was the duty of the said servants of the defendant, and which they well knew to be dangerous to children, whereby and on account of the negligence

of the defendant, as aforesaid, the plaintiff while in the exercise of reasonable care and while assisting in operating the turn-table as so requested, was caught in the machinery of said turn-table, whereby his right foot and leg were crushed and bruised, which rendered necessary the amputation of a portion of the right foot," etc., etc.

The plea was the general issue.

This turn-table is a swing bridge set in the track, upon which engines are reversed. It is a little longer than is an engine with the tender attached. It is pivoted upon its center, and a number of wheels in a circle and traveling upon a wooden frame preserve its equilibrium as it is turned. At each end, when the rails of the turn-table coincide with those of the track, it rests upon beams so that an engine may pass safely on and off the table. The foundation on which the table rests projects several feet outside of the line traversed by the wheels on the circular track. The upper surface of this foundation is two or more feet below the surface of the table and of the connecting tracks. Projecting from each end of the table is a bar or arm long enough for three men walking side by side to push upon for the purpose of turning the table. There is a platform, of the same height as are the tracks, surrounding the table, upon which the men walk when so employed. It was an easy job for four men to turn this table when loaded with an engine and tender.

The evidence of the plaintiff tends to prove that August 9, 1900, he and three or more other boys were in the railway yards near this turn-table, when an engine about to be reversed came on the table. That he, then aged eleven years and eight months, and Rudolph Markos, aged twelve years, sat on a log about ten feet from the table when the employees of the defendant, five in number, began to operate it. That when they had pushed it half way round, one of the employees called upon the plaintiff and his companion to help them. That the plaintiff got down upon the foundation beams next to or near to the circular track and pushed from there. That when the table was reversed the men held it so that the engine could pass off the table upon

the connecting railway track, and the engine started to come off. That as the center of gravity of the table was shifted by the weight of the advancing engine, the south end of the table settled down two or three inches until it rested upon the beam placed there for that purpose. That the plaintiff then stood upon this beam with his right foot advanced, so that when the end of the table settled down upon the beam the three middle toes of that foot and a part of the foot next to them were caught and crushed, necessitating an operation in which these toes were amputated and skin grafting done to cover the wound on the instep. That this table was situate in a tract of land that was not fenced or enclosed, and that children were accustomed to play around it.

The evidence of the defendant tends to prove that no one of its employees called upon these boys to come to help them. That only one of the men saw plaintiff there prior to his injury, and that man did not think the boy was in danger, as he did not see that his foot was under the bed of the table. That this table was at the north end of the defendant's yard; that north of the defendant's yard was the yard of the Chicago, Milwaukee & St. Paul railway, and east of it was the yard of the Chicago & Northwestern railway; and that the outer sides of these yards were fenced, but there were no fences between the different railway yards, and that the turn-table was a block away from any public street or thoroughfare.

EDGAR A. BANCROFT and WILLIAM J. HENLEY, for appellant.

O'BRIEN & McKINLEY, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The amount of the verdict in this case ($14,000) is a very large sum of money—more than the average man can accumulate in a long lifetime of labor. It is true that the plaintiff has lost a part of his right foot, and that at times it inconveniences him and gives him a very slight limp, but at the most he is but partially disabled. At the time of the trial he was employed as a messenger boy, and there

is no evidence that his work is not satisfactorily performed. If it be admitted that the defendant was guilty of negligence in the premises, there is no evidence showing that such negligence was wilful or wanton. Granting that the plaintiff should have a recovery, compensatory damages are all that he is entitled to.

On the motion for a new trial, at the suggestion of the trial judge, counsel for the plaintiff remitted $7,000 from the verdict, and thereupon that motion was overruled and judgment was entered for $7,000.

Under the facts and circumstances shown in this record, we regard the verdict of $14,000 as grossly excessive and the judgment of $7,000 as excessive.

In an action for damages, where there was no dispute as to the liability of appellant, and there could be no question but that appellee was seriously injured, the judgment rendered in favor of appellee was in the sum of $21,000. The Appellate Court, after finding that the verdict, while not warranted as to its entire amount by the credible evidence in the case, was not so far in excess of such an amount as the credible evidence would support as to indicate passion or prejudice, and that no reversible error intervened in the trial, decided that if appellee would remit $6,000 from the judgment it would be affirmed. This appellee did, and an affirmance was ordered as to the remainder thereof. C. & E. I. Ry. Co. v. Cleminger, 77 Ill. App., 186. This rule, whether followed in the trial court or in the Appellate Court, while strongly criticised in some of the cases, has been adhered to by the Supreme Court, where the amount of the verdict was not so great as to indicate passion or prejudice, and where the *remittitur* reduced the judgment to a sum that did not seem to be excessive to that court. N. Chicago St. Ry. Co. v. Wrixon, 150 Ill. 532; Goldie v. Werner, 151 Ill. 551; C., M. & St. P. Ry. Co. v. Walsh, 157 Ill. 672; Elgin City Ry. Co. v. Salisbury, 162 Ill. 187. Under these circumstances, the rule, though illogical, is justified by the maxim that it is necessary there should be an end to litigation, and by the constitutional

right every one has to receive promptly that which is justly due him. We, however, believe that no case can be found in which a judgment, based upon a *remittitur*, although approved by the trial judge, has been allowed to stand where the reviewing tribunal is satisfied from the record that the verdict rendered was based upon passion or prejudice, or was founded upon a misconception of the evidence. In such a case the infirmity pervades the entire verdict, and the remission of the one-half or of any other part of the whole amount does not free the remaining part from the taint. The courts will not take money or other property from one and give it to another, except upon a fair trial in accordance with the forms of law. This principle is illustrated by the following cases: C. & N. W. Ry. Co. v. Cummings, 20 Ill. App. 333; W. Chicago St. Ry. Co. v. Johnson, 69 Ill. App. 147; C. & E. Ry. Co. v. Binkopski, 72 Ill. App. 31; Sterling H. Co. v. Galt, 81 Ill. App. 602; Lockwood v. Onion, 56 Ill. 512; Loewenthal v. Streng, 90 Ill. 74.

At the time he was injured the plaintiff was not a servant of the defendant. It is neither alleged nor proved that the employee of defendant who called (if he did call) upon plaintiff to assist in turning the table, had any authority to make the plaintiff a servant of the defendant. There was no contract of employment then or at any other time between the plaintiff and the defendant. Hence the plaintiff at the time of the accident was not the servant of defendant. But if the request that the plaintiff aid in the work made him a servant of the defendant at the time he was injured, then there can be no recovery, for it is clear that he was injured by the negligence of a fellow-servant at a time when they were directly co-operating with each other in a particular business in the same line of employment.

If the plaintiff was a volunteer, this suit must fail, for the defendant owed him no duty other than not to injure him wantonly or wilfully. The evidence contained in this record will not justify a finding that such injury was wanton or wilful. Legal liability is based upon the breach of

some legal duty. When a volunteer assists the servant of another, he does so at his own risk. Ill. Cent. Ry. Co. v. Godfrey, 71 Ill. 500; Ill. Cent. Ry. Co. v. Eicher, 202 Ill. 556; Flower v. Penn. Ry. Co., 69 Pa. St. 210; Atlanta, etc., Ry. Co. v. West, 121 Ga. 641. The only exception to this general rule is where the alleged volunteer has an interest in the work being done, in which event he is entitled while engaged in the work to be protected from the carelessness of the servants of the master. Cleveland, etc., Ry. Co. v. Marsh, 63 Ohio St. 236; Welch v. Maine Central Ry. Co., 86 Me. 552.

The duty which the law imposes upon the defendant and the omission of which is actionable negligence, is not affected by the age of the plaintiff. His youth does not supply the lack of negligence upon the part of the defendant. He cannot recover unless there was negligence upon the part of the defendant which caused his injury. Nolan v. N. H. & H. Ry. Co., 53 Conn. 461; Sherman v. H. & St. J. Ry. Co., 72 Mo. 62; C. & W. I. Ry. Co. v. Roath, 35 Ill. App. 349; Gavin v. Chicago, 97 Ill. 66; Hargreaves v. Deacon, 25 Mich. 1.

The only ground upon which this judgment can be supported is upon what is called the law of "attractive nuisances." The leading case upon this question is Railroad Co. v. Stout, 17 Wallace, 657, where a child of six years was injured while playing around a turn-table, situate near two traveled roads in a village. The latch by which the table was fastened was broken, and the table was unguarded and unfenced. The court held, while it is the general rule in regard to an adult that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself be free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and that is to be determined in each case by the circumstances of that case. And accordingly, whether there was negligence upon the part of the railway company was held to have been properly left to the jury.

Belt Ry. Co. v. Charters.

In Donk Bros. C. & C. Co. v. Leavitt, 109 Ill. App. 385, where a child less than three years of age was drowned in an open and unguarded cistern, the court, in affirming the judgment, say: "The law of this State recognizes the 'attractive nuisance' doctrine, so far as children are concerned, whether they are of sufficient age to have some degree of discretion or not, and the consequent duty of defendants to guard such structures or agencies that no harm shall come to those who are physically or mentally incapable of taking care of themselves."

In the City of Pekin v. McMahon, 154 Ill. 141, a child of eight years was drowned in a deep pond lying in one-half a block of ground in a populous city. The pond had been fenced, but upon the north and south sides there were openings for a wagon way. Children frequented the pond and amused themselves by riding on logs and timbers which floated about in it. The city had been notified of the dangerous condition of this pond and its attractiveness to children. The Supreme Court, in sustaining a judgment for damages, after stating the general rule as to trespassers, said: "An exception, however, to this general rule exists in favor of children. Although a child of tender years, who meets with an injury upon the premises of a private owner, may be a technical trespasser, yet the owner may be liable if the things causing the injury have been left exposed and unguarded, and are of such a character as to be an attraction to the child, appealing to his childish curiosity and instincts. Unguarded premises, which are thus supplied with dangerous attractions, are regarded as holding out implied invitations to such children."

An examination of the "attractive nuisance" cases will show that in nearly every instance the child injured was less than ten years of age and incapable of exercising ordinary care; and that the machinery or other dangerous agent was situated near a public street or alley, in a populous neighborhood, and unfenced.

In St. Louis, etc., Ry. Co. v. Bell, 81 Ill. 76, at a time when the Supreme Court so far considered the facts as to

determine whether or not the verdict was against the weight of the evidence, it is said: "In view of the isolated position in which the turn-table was located, the proofs fail to show that appellant was guilty of such a want of care as could lawfully charge it with damages for this accident."

The doctrine of "attractive nuisance" is recognized by our courts, and the questions of fact as to the care or want of care of the child for his own safety, and the negligence or the lack of it upon the part of the defendant, are for the determination of the jury under proper instructions by the court.

It is a weakness of the plaintiff's case that it is not directly based upon the doctrine of "attractive nuisance." As appears by the declaration set forth in the statement of facts, there is no averment in the charging part of the first count that the plaintiff was drawn to the turn-table by childish curiosity, or that the table was attractive to children of tender years, or that the plaintiff was then so young that he was unable to appreciate the danger of the situation; and in the second count the sole negligence charged is that the defendant, by means of its servants, invited the plaintiff to assist them in turning the table.

While it may be that the first count is a defective statement of a good cause of action, and we think it is, by no laxity of pleading can the second count be brought within the "attractive nuisance" rule. If this is an "attractive nuisance" case, then the evidence tending to prove that other boys had been seen around the turn-table prior to the accident, and that it was situate in a residence district, was properly admitted, otherwise such evidence should have been ruled out.

Thomas McFarlane, who had charge of the men engaged in turning the table, was asked by the defendant: "Did any of these people at the turn-table or yourself have a right to employ helpers?" An objection was interposed and sustained, and the answer "No, sir," was struck out. This action of the court is not ground for reversal, for the

reason that the burden of proving such authority, if it existed, was on the plaintiff.

We think instructions A and B, given on behalf of the plaintiff, are not misleading nor do they erroneously state the law.

Instruction E, concerning damages, is in the usual form. The clause relating to "loss of health" of the plaintiff is guarded by the words "if any." Further, the testimony of Dr. Thilo, and of James Charters, justified the insertion of this clause.

The trial judge ruled too rigorously against the defendant upon its tendered instructions. We are of the opinion that under the declaration the defendant was entitled to have the jury instructed upon the law as to volunteers and as to trespassers, and also upon the law as to the want of authority in servants engaged in handling its engines and in the operation of its turn-tables, to bind the defendant by asking others to assist them.

The judgment of the Circuit Court is reversed and the cause is remanded.

*Reversed and remanded.*